THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v. JACK KOSLOW, Appellant. THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v. MELVIN MITTMAN, Appellant.— Appeals from a judgment of the County Court, Kings County, convicting appellants of murder in the first degree, committed in the course of the commission of the independent felony of kidnapping, with a recommendation that each appellant be imprisoned for the term of his natural life. Each appellant was sentenced in accordance with the jury's recommendation. Koslow further appeals from the sentence, the order denying his motion to set aside the verdict, the order denying his motion to inspect the Grand Jury minutes and to dismiss the indictment, and from all other intermediate orders. Judgment reversed on the law and the facts and a new trial ordered. In our opinion, the People's proof was insufficient to establish the commission of, or the attempt to commit, the underlying

felony of kidnapping. The evidence failed to present an adequate showing of detention or concealment of the alleged victim "against his will", indispensable elements in the crime of kidnapping (Penal Law, § 1250; 51 C. J. S., Kidnapping, § 1, subd. [b], par. [9]; *Chatwin* v. *United States,* 326 U. S. 455, 460, 464–465). The proof was that after 11:00 P.M. on August 16, 1954 the appellants walked with the deceased, an adult 35 years of age and 5 feet, 11 inches tall, some seven or eight city blocks, a distance of about three fifths of a mile, from a place called "triangle park", located at the Brooklyn end of the Williamsburgh Bridge, where they came upon him asleep on a bench, to a pier located at the foot of South Fifth Street, off Kent Avenue, where the homicide of deceased concededly occurred after appellants' assault upon him. On the route followed by appellants and their victim they passed two men playing checkers or chess on an adjoining bench in the park, as well as a commercial garage and a diner, both of which were open all night, three bars and grills open until 3:00 or 4:00 A.M., and a department of sanitation garage in which at least six men worked all night. While so walking, the proof was that pedestrians and vehicles were using the streets which constituted the line of travel. The park and the streets were lighted. Along the route, there were three fire alarm boxes and one police call box. The general area contained other all-night restaurants, and candy stores which remained open very late. Under these circumstances, when the victim is "seized and removed" on a public thoroughfare, and the parties travel openly and publicly, in the potential, if not actual, presence and view of many people, it has been held that "there certainly is no secrecy about the transaction, and it bears no resemblance to what has always been understood to be kidnapping" (*People* v. *Camp,* 139 N. Y. 87, 92). In the case at bar, there was no proof of physical force or violence exerted by the appellants during the walk with their victim, or of threats to harm, made with weapon, instrument or blow, and with apparent power to fulfill such threats (*People* v. *Hope,* 257 N. Y. 147). The proof fell short of establishing an inveiglement or fraud as a consequence of which the victim was compelled to submit to forcible detainment (*People* v. *Florio,* 301 N. Y. 46; *People* v. *De Leon,* 109 N. Y. 226). On the contrary, the People's proof was that the deceased was proceeding on his own momentum, and as the walk progressed the deceased was upholding his end of a conversation which revealed his occupation and marital difficulties, without evincing any sign of distress and without directing a call for assistance to the pedestrians or the occupants of the vehicles passing by. While the People's proof included its expert's opinion that the deceased had a "3 plus" alcohol content in his brain, this evidence did not override the failure of the People to make a showing that, had he been capable of leaving the appellants during the walk from the park to the pier or had he been able to express a desire to do so, the deceased would have been detained against his will (*People* v. *Gordon,* 258 App. Div. 916). Moreover, the People's proof was contradictory of its expert's opinion that a "3 plus" alcoholic subject sustains a theoretical loss of his faculties insofar as the evidence showed that the deceased was capable of putting on his socks and shoes after being roused from his sleep on the park bench, then was able to walk "practically straight", albeit with some undefined "waving" from side to side, and talk intelligently enough to impart some details of his biographical data, without appearing "very drunk". With the elimination of the kidnapping charge insofar as the trip from the park to the pier is concerned, appellants' detention of the deceased on the pier, incidental to the acts of assault there committed, could not in our opinion form any basis for the separate crime

of kidnapping. The acts of assault committed on the pier merged into the resultant homicide and may not be deemed the separate and independent offense which could support a conviction for felony murder (*People* v. *Huter,* 184 N. Y. 237, 244; *People* v. *Moran,* 246 N. Y. 100, 102–103; *People* v. *Luscomb,* 292 N. Y. 390, 395; *People* v. *Wagner,* 245 N. Y. 143, 148–149; *People* v. *Lazar,* 271 N. Y. 27, 30–31). Under the circumstances of this case, ours is not the function to reduce the sentence to one appropriate to a crime proved, "but not found by the jury to have been committed" (*People* v. *Fauchot,* 237 App. Div. 698). No separate appeal lies from the sentence or from the intermediate orders, which have been reviewed on the appeal from the judgment of conviction. Hallinan and Kleinfeld, JJ., concur. Nolan, P. J., concurs, with the following memorandum: I concur for the reasons stated in the memorandum of Hallinan and Kleinfeld, JJ., and for the additional reason that a new trial is in any event required in the interests of justice. These appellants were convicted of murder in the first degree on a finding that the homicide charged against them was committed while they were engaged in the commission of the independent felony of kidnapping. The conviction rests to a great extent, if not entirely, on circumstantial evidence. An essential part of this evidence consisted of extrajudicial statements made by appellants (see *People* v. *Bretagna,* 298 N. Y. 323, 326), which were not confessions of kidnapping or of murder, and in part tended to exculpate appellants insofar as those crimes were concerned. Counsel for both appellants requested the court to charge the law with respect to circumstantial evidence. The court refused to charge that insofar as appellant Koslow was concerned the evidence against him was circumstantial, and in response to the request made by counsel for appellant Mittman that he charge with respect to the sufficiency of circumstantial evidence (see *People* v. *Harris,* 306 N. Y. 345, 351), stated "I did not charge the law of circumstantial evidence in the case because in my opinion as a matter of law it was not involved in this case." In response to a further request by counsel for appellant Koslow, the court declined to charge that in considering the statements made by Koslow, the jury must take into consideration the statements therein contained which absolved him from guilt (cf. *People ex rel. Perkins* v. *Moss,* 187 N. Y. 410, 428; *People* v. *Miller,* 247 App. Div. 489, 493). Although it may be that the court was not required to instruct the jury as to the law in the precise language embodied in the requests, its was nevertheless his duty to instruct them as to the law which related to the material questions brought to his attention by these requests (cf. *People* v. *Odell,* 230 N. Y. 481; *People* v. *Wallens,* 297 N. Y. 57; *People* v. *Leavitt,* 301 N. Y. 113), and the failure so to do violated appellants' substantial rights. Murphy and Ughetta, JJ., dissent and vote to affirm the judgment with the following memorandum: The appellants found their victim, a derelict, asleep on a park bench. He had been drinking heavily. His shoes and socks were off. They burned his feet with a match and a cigarette. He woke up startled and obviously frightened. They ordered him to come with them and marched him out of the park for a distance of eight blocks to a pier on the East River. There the appellants punched him until he dropped into the water and drowned. The indictment charged appellants with murder in the first degree. The Trial Judge charged seven possible verdicts, including a possible verdict of guilty of felony murder. He limited the independent felony to either kidnapping or attempted kidnapping. The jury found the appellants guilty of murder in the first degree with the express statement that they were guilty of "a felony murder". The jury recommended life imprisonment, which was

the sentence imposed. The memorandum of Hallinan and Kleinfeld, JJ., dwells on the theory that because the eight blocks along which the march to the pier took place were in a more or less built-up neighborhood, and because appellants did not use physical violence on their victim during the eight-block march, there was no satisfactory evidence of the commission of the independent felony of kidnapping. In our opinion there was ample evidence from which the jury could properly find there was an independent felony of either kidnapping or attempted kidnapping. Physical restraint or violence is not necessary in order to constitute kidnapping; mental cruelty actuated by fear can be just as restraining or compelling on a victim as physical violence (*People v. Hope*, 257 N. Y. 147, 151).