THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JACK INDIA, Appellant.

First Department, May 3, 1979

## APPEARANCES OF COUNSEL

*William E. Hellerstein* and *Robert S. Dean* for appellant.

*Mario Merola, District Attorney (Thomas Gazianis* and *Billie Manning* of counsel), for respondent.

## OPINION OF THE COURT

SANDLER, J.

In the early afternoon of March 24, 1977, a security guard of the Fordham Hill Project, investigating a report of a "suspicious character", located the defendant on the 12th floor hallway of the apartment building at 2440 Sedgwick Avenue. When the defendant responded evasively to questions as to the reason for his presence, the guard, accompanied by the building superintendent, escorted him to the first floor where they were joined by a supervisor. The three men began to question the defendant in a vestibule adjacent to the elevator.

Mr. Edward Blanchard, a painter, entered the elevator and asked the superintendent if a particular apartment was open so that he could complete his work. Someone said that police officers were coming. The defendant shoved Mr. Blanchard further into the elevator, ordered the others to stay back, and the elevator descended to the basement.

Blanchard asked the defendant to release him to which the defendant responded by telling him to be quiet. When the door opened in the basement a police officer ordered the defendant to come out with his hands up. Defendant told the officer to release the elevator door or he would shoot Blanchard.

The elevator went up to the eighth floor where defendant, holding Blanchard's arm, ordered Blanchard to accompany him on a walk up to and on the roof and then down to the second floor. During this period, lasting some 20 minutes, Blanchard repeatedly pleaded with the defendant to let him go, without success.

At the second floor, a police officer again urged defendant to surrender himself, but instead defendant went with Blanchard to the third floor where he began knocking on various doors. Eventually he knocked on the door of an apartment occupied by Mr. and Mrs. Gacconier, an elderly couple. Expecting her grandchildren to be arriving from school, Mrs. Gacconier opened the door and the defendant slipped into the apartment pulling Mr. Blanchard by the arm. He told the Gacconiers not to be afraid, that he would not hurt them if they did what he told them to do, and further stated that he did not want money or anything else but wanted to escape from the police.

Defendant remained in the apartment with Blanchard and the Gacconiers for a period estimated at some three to three and one-half hours. At an early point he directed Blanchard and Mr. Gacconier to tie up sheets so that he could escape out of the window but abandoned the idea when Mr. Gacconier pointed out to him that the police were surrounding the building and would surely capture him.

During the stay in the Gacconier apartment, defendant did not exhibit his gun but kept his hand throughout in his right coat pocket. When Mr. Gacconier asked the defendant to release Blanchard, the defendant refused to do so stating that he had his reasons. Defendant permitted Blanchard to use the phone at one point during his stay and Mr. Gacconier to receive a telephone call. After some two hours, all of the occupants of the room had coffee prepared by Mrs. Gacconier.

Eventually the police located the apartment and rang the doorbell. Mr. Gacconier was permitted to answer the door and the police, alerted by him as to defendant's presence, withdrew him from the apartment. They entered the apartment and the defendant was arrested and disarmed. A loaded and operable revolver was recovered from a closet.

The defendant was indicted by a Grand Jury for kidnapping in the second degree (three counts), one count of burglary in the second degree, and one count of criminal possession of a weapon in the second degree. After a jury trial he was convicted of kidnapping in the second degree (the Blanchard count), two counts of unlawful imprisonment in the first degree (the Gacconiers) and burglary in the second degree.

On this appeal defendant argues, *inter alia,* the following: (1) That the evidence was legally insufficient to sustain the conviction of kidnapping in the second degree; (2) that the trial court failed, as required by CPL 300.10, to inform defense

counsel that he was submitting unlawful imprisonment as a lesser included count with regard to the Gacconiers and accordingly those convictions must be reversed; and (3) that the conviction for burglary must likewise be reversed because the trial court failed to grant defense counsel's request to charge criminal trespass in the first degree as a lesser included count.

■ ■ As to the last two contentions, we are in agreement that the convictions on the challenged counts must be reversed for the reasons advanced by the defendant and that these counts must be remanded for further proceedings.

■ CPL 300.10 (subd 3) explicitly requires the trial court to inform the parties prior to the summations of those counts or offenses which the jury will be instructed to consider. As the District Attorney acknowledges with commendable candor, the trial court here failed to inform the parties that unlawful imprisonment in the first degree would be submitted as a lesser included count with regard to the Gacconiers, and this omission requires a reversal of the convictions on those counts.

In fairness to the trial court, however, the omission so to instruct the parties apparently resulted from an understandable failure to appreciate that defense counsel's request to charge unlawful imprisonment had been limited to the Blanchard kidnapping count.

■ We also are of the view that the trial court erred in refusing defense counsel's request to submit criminal trespass in the first degree as a lesser included offense of burglary in the second degree. It is clear that criminal trespass in the first degree is a lesser included offense of burglary in the second degree. (See CPL 1.20, subd 37; cf. Penal Law, § 140.25, subd 1, par [a], burglary in the second degree, with Penal Law, § 140.17, subd 1, criminal trespass in the first degree.)

CPL 300.50 (subds 1, 2) requires the trial court to submit a lesser included offense if requested by either party to do so when there is a "reasonable view of the evidence which would support a finding that the defendant committed such lesser offense but did not commit the greater." The familiar rule, restated in *People v Henderson* (41 NY2d 233, 236), is: "To warrant a refusal to submit it 'every possible hypothesis' but guilt of the higher crime must be excluded * * * the evidence for that purpose being required to be considered in the light most favorable to the defendant * * * since the jury is free to

accept or reject part or all of the defense or prosecution's evidence".

The sole distinction between criminal trespass in the first degree and burglary in the second degree under the facts here is that the burglary charged requires that the defendant enter or remain unlawfully "with intent to commit a crime therein". Undoubtedly, as the dissent suggests, the evidence is extremely persuasive that the defendant entered the Gacconier apartment with Blanchard with a view to continuing the unlawful restraint of Blanchard. However, the possibility cannot be excluded that a jury might reasonably have concluded from all of the circumstances that the defendant entered and remained in the apartment intending only to use it as a means of escape. Under the controlling standard, that issue was for the jury to determine, not the trial court, and the failure to submit it to the jury was error requiring reversal of the burglary conviction.

The remaining issue, the legal sufficiency of the evidence to establish guilt of kidnapping in the second degree, presents a more complex problem.

Section 135.20 of the Penal Law provides: "A person is guilty of kidnapping in the second degree when he abducts another person."

As defined in subdivision 2 of section 135.00, " 'Abduct' means to restrain a person with intent to prevent his liberation by either (a) secreting or holding him in a place where he is not likely to be found, or (b) using or threatening to use deadly physical force."

"Restrain" in turn is defined in pertinent part in subdivision 1 of section 135.00 as restricting "a person's movements intentionally and unlawfully in such manner as to interfere substantially with his liberty by moving him from one place to another, or by confining him either in the place where the restriction commences or in a place to which he has been moved, without consent and with knowledge that the restriction is unlawful."

Also pertinent is section 135.10 of the Penal law defining unlawful imprisonment in the first degree which states: "A person is guilty of unlawful imprisonment in the first degree when he restrains another person under circumstances which expose the latter to a risk of serious physical injury."

■ When the activities of the defendant described in the

evidence are considered in light of the statutory language, it would seem clear that the crime of kidnapping in the second degree was satisfactorily established. The only element of the crime arguably in doubt is that requiring an intent to prevent liberation. While the defendant's overriding purpose of course was to avoid apprehension for possession of a gun, and not to prevent Blanchard's liberation, a jury could conclude reasonably that the required intent was inherent in his actions.

Defendant urges, however, that the term "abduct" should be construed in the light of a claimed dominant legislative purpose to require, as described in the Practice Commentary, "a very serious form of restraint, savoring strongly of the substantial removal, isolation and/or violence usually associated with genuine kidnapping." (Hechtman, Practice Commentaries, McKinney's Cons Laws of NY, Book 39, Penal Law, § 135.00, pp 494-495.) If so considered, it is argued, an abduction was not established by the evidence. The general principle presented by the defendant has validity. We doubt that it is appropriately applicable to the facts of this case.

Preliminarily, it seems clear that the events described do not come within the terms of the so-called merger doctrine, first set forth by the Court of Appeals in *People v Levy* (15 NY2d 159) and reaffirmed in *People v Cassidy* (40 NY2d 763) after the comprehensive redrafting of the kidnapping and related sections in the revised Penal Law, effective 1976. As restated in *Cassidy* (p 767): "The merger doctrine is intended to preclude conviction for kidnapping based on acts which are so much the part of another substantive crime that the substantive crime could not have been committed without such acts and that independent criminal responsibility may not fairly be attributed to them."

It would surely be an unwarranted extension of this doctrine for us to hold that Blanchard's extended unlawful restraint was merely incidental to the crime of unlawful possession of a gun or the crime of menacing.

Defendant's reliance here is rather on a related but separate principle, the subject of very few reported decisions, and the parameters of which are unclear. The principle was first introduced by the Court of Appeals in *People v Levy (supra,* pp 164-165) when the court stated that the then kidnapping statute was to be limited in its application to " 'kidnapping' in the conventional sense in which that term has now come to have acquired meaning." This approach was most explicitly

followed in *People v Miles* (31 NY2d 918), in which the Court of Appeals reversed a kidnapping conviction and dismissed the indictment where the defendant at the point of a gun had compelled a father and son to drive him from Utica to Syracuse. The court said (p 919): "The compulsion to provide transportation had no such relationship to detention as to make out a true kidnapping under the former statute (cf. *People v. Levy,* 15 N Y 2d 159; *People v. Lombardy,* 20 N Y 2d 266)."

The court went on to note (p 919) that: "The new Penal Law more precisely defines and limits the scope of kidnapping and related crimes (art. 135)." (Cf. *People v Brinson,* 55 AD2d 844.)

Although the issue is not free from doubt, we have concluded that there are joined together in this case two factors that render inapplicable the principle contended for by the defendant.

First, Blanchard was restrained for a substantial period of time (some three and one-half to four hours) and second, the jury could reasonably conclude that during that period he was held as a hostage.

Relevant here is the definition of kidnapping in the Model Penal Code adopted by the American Law Institute in 1962 and which clearly influenced the draftsmen of the revised Penal Law in the writing of the kidnapping sections. (See *People v Usher,* 49 AD2d 499, 503.) "Kidnapping" was defined in pertinent part in section 212.1 of the Model Penal Code as follows:

"A person is guilty of kidnapping if he unlawfully removes another * * * a substantial distance from the vicinity from where he is found, or if he unlawfully confines another for a substantial period in a place of isolation * * *

"(a) to hold for ransom or reward, or as shield or hostage".

It may be (although we need not decide) that if the defendant had released Blanchard within a short period of time after the initial abduction, the crime of kidnapping in the second degree would not have been established even though the conduct fell within the literal proscription of the statute. The two critical elements described above, the substantial duration of the restraint, and the holding of another as a hostage, suffice to sustain defendant's conviction of kidnapping in the second degree.

Accordingly, the judgment of the Supreme Court, Bronx

County (REILLY, J.), rendered November 4, 1977, convicting defendant following a jury trial of kidnapping in the second degree, unlawful imprisonment in the first degree, and burglary in the second degree should be modified, on the law, to the extent of reversing the convictions for unlawful imprisonment in the first degree and burglary in the second degree and remanding those charges to the trial court for further proceedings, and should be otherwise affirmed.

SILVERMAN, J. (dissenting in part). I would affirm the conviction of burglary in the second degree.

In my view there is no "reasonable view of the evidence which would support a finding that the defendant committed such lesser offense [criminal trespass in the first degree] but did not commit the greater [burglary in the second degree]." (CPL 300.50, subd 1.) For present purposes, the distinction between the two crimes is whether when defendant knowingly entered or remained unlawfully in the Gacconier apartment, he did so "with intent to commit a crime therein" (Penal Law, § 140.25). Concededly, defendant was engaged in the crime at least of unlawful imprisonment of Blanchard; his attorney asked the jury to convict him of that, and his attorney on appeal asks us to reduce his conviction of kidnapping of Blanchard to unlawful imprisonment. That unlawful imprisonment was a continuing crime. In the course of it, defendant took Blanchard, his prisoner, into the Gacconier apartment, into which he entered and remained unlawfully.

The connection between the imprisonment or kidnapping of Blanchard and the unlawful entry and remaining in the Gacconier apartment was direct and purposeful. Defendant unlawfully entered the apartment and took Blanchard into the apartment for the purpose of concealing himself and his prisoner from his pursuers. It was essential to the unlawful imprisonment for defendant to get himself and his prisoner into the apartment where his pursuers were not. Unlawful imprisonment involves restraining another person (Penal Law, § 135.10). Kidnapping involves abducting (Penal Law, § 135.20). Subdivision 1 of section 135.00 defines "restrain" another person to include interfering with his liberty "by moving him from one place to another, or by confining him * * * in a place to which he has been moved". Subdivision 2 defines "abduct" another person to include "secreting or holding him in a place where he is not likely to be found". The Gacconier apartment was the place to which defendant moved

Blanchard and confined him. It was also the place where defendant was holding Blanchard "in a place where he is not likely to be found".

Thus I see no reasonable view of the evidence which would support a finding that when defendant unlawfully entered and remained in the Gacconier apartment he did not do so "with intent to commit a crime therein".

SULLIVAN and LANE, JJ., concur with SANDLER, J.; FEIN, J. P., and SILVERMAN, J., dissent in part in an opinion by SILVERMAN, J.

Judgment, Supreme Court, Bronx County, rendered on November 4, 1977, modified, on the law, to the extent of reversing the convictions for unlawful imprisonment in the first degree and burglary in the first degree and burglary in the second degree and remanding those charges to the trial court for further proceedings, and the judgment is otherwise affirmed.