The People of the State of New York, Respondent, v George Pellot, Appellant.

Second Department, December 31, 1984

**APPEARANCES OF COUNSEL**

*William E. Hellerstein* (*Karen Goldstein* of counsel), for appellant.

*Elizabeth Holtzman, District Attorney* (*Barbara D. Underwood, Karen M. Wigle* and *Allan P. Root* of counsel), for respondent.

**OPINION OF THE COURT**

Lazer, J. P.

At issue here is the current status of the merger doctrine as it relates to the crime of kidnapping in the first degree as defined in subdivision 3 of section 135.25 of the Penal Law. More specifically, we must determine whether the merger doctrine precludes such a kidnapping conviction based upon an abduction which lasted less than two minutes but resulted in the victim's death. We conclude that the legislative history and internal structure of article 135 of the Penal Law, together with the

purpose and rationale of the merger doctrine, render the merger doctrine inapplicable to the crime of kidnapping in the first degree.

Evidence adduced at the trial proved beyond a reasonable doubt that on the evening of January 6, 1979, defendant and an accomplice — armed with a shotgun and a handgun — accosted Luis Marrero and Eduardo Vega on a public street around the block from Marrero's home. Pointing the weapons at Marrero and Vega, they demanded information concerning the whereabouts of "Chino". Vega professed ignorance but Marrero indicated that he knew where Chino was to be found. Defendant and his accomplice then compelled Marrero to accompany them at gunpoint in the direction of his home, leaving Vega behind. Approximately a minute later, Marrero ran back down the street towards Vega, two shots were heard, and Marrero fell against a spiked fence. Marrero's death was caused by multiple penetrating wounds in the chest and thigh which turned out to be too deep to have been caused by the spiked fence. He sustained no gunshot wounds.

Defendant was subsequently indicted for the crimes of kidnapping in the first degree, murder in the second degree (two counts), criminal use of a firearm in the second degree (two counts) and criminal possession of a weapon in the second degree (two counts). Following a jury trial, he was convicted of kidnapping in the first degree, manslaughter in the first degree and criminal possession of a weapon in the second degree. He was sentenced to a term of 25 years to life on the kidnapping conviction, 8⅓ to 25 years for the manslaughter and 5 to 15 years for the weapons conviction, with all terms to be served concurrently.

The defendant's prime attack is upon his kidnapping conviction, which — he contends — should be set aside and the corresponding count of the indictment dismissed. Although defendant's conduct clearly falls within the language of the statute defining the crime of kidnapping in the first degree (Penal Law, § 135.25, subd 3), he argues that the acts that comprised the purported kidnapping were incidental to and therefore merged with the crime of murder of which he was also charged, or the crime of manslaughter, of which he was convicted. The essence of his argument is that the period of detainment was so brief and the asportation so limited, that no true kidnapping took place. Defendant thus bases his claim upon the kidnap merger doctrine first enunciated by the Court of Appeals in *People v Levy* (15 NY2d 159, cert den 381 US 938) and since firmly established in

numerous other holdings (see, e.g., *People v Cassidy,* 40 NY2d 763; *People v India,* 67 AD2d 488; *People v Brinson,* 55 AD2d 844; see, also, Shapiro, Seizure or Detention for Purpose of Committing Rape, Robbery, or Similar Offense as Constituting Separate Crime of Kidnapping, Ann., 43 ALR3d 699). The merits of these contentions are what we now consider.

## I.

It has long been the law of this State that "the detention *inevitably* occurring during the *immediate* act of commission of such a crime as rape or robbery [does] not form a basis for a separate crime of kidnapping" (*People v Florio,* 301 NY 46, 49; emphasis supplied). This early predecessor to the modern merger doctrine was of limited benefit to defendants, however, since it did not bar a kidnapping conviction if the restraint or asportation was in any way greater than that which is inherent in almost any crime of actual or threatened violence against the person. Its effect was simply to prevent that restraint which occurs in every robbery, rape or assault from being considered a kidnapping (compare *People v Florio,* 301 NY 46, *supra,* with *People v Koslow,* 6 AD2d 713; see Proposed New York Penal Law, NY Comm on Revision of Penal Law and Crim Code, Commission Staff Notes, former art 140 [1964]; Kidnapping As Separate Crime, Ann., 17 ALR2d 1003). Defendant Pellot's actions clearly constitute a kidnapping under this rule. *People v Levy* (15 NY2d 159, *supra*) marked an expansion of the principle and established the present kidnap merger doctrine. There, the Court of Appeals reversed the kidnapping convictions of three defendants who had invaded a car occupied by a married couple, forced them into the back seat at gunpoint, and proceeded to rob them while driving aimlessly around the streets of Manhattan for about 20 minutes. Although recognizing that both asportation and detention were proven, the court concluded that no separate crime of kidnapping had been committed because the restraint involved was merely a part of the robbery. Expressing concern lest the kidnapping statute be interpreted so broadly as to impose its extremely harsh sanctions on persons who were essentially guilty only of some less serious crime, the *Levy* court reasoned that the kidnapping statute should be limited "to 'kidnapping' in the conventional sense in which that term has now come to have acquired meaning" (15 NY2d 159, 164-165, *supra*).

The kidnapping merger doctrine has since been applied to bar kidnapping prosecutions in a broad range of factual patterns, despite the fact that the underlying actions did fall literally

within the ambit of the kidnapping statute, on the ground that the statute should not be applied "to crimes which are essentially robbery, rape or assault and in which some confinement or asportation occurs as a subsidiary incident" (*People v Lombardi,* 20 NY2d 266, 270).

The doctrine was further refined and to some extent limited in *People v Miles* (23 NY2d 527, cert den 395 US 948) in which the Court of Appeals affirmed the kidnapping convictions of several defendants who, after beating their victim and injecting him with hot lye in an attempt to kill him in New Jersey, placed the victim, whom they believed to be dead or dying, in the trunk of a car and proceeded to drive around in a futile attempt to dispose of the body until they were apprehended and their still living victim was rescued by the police in New York City. The entire incident lasted approximately five hours.

The court's refusal to apply the merger doctrine in *Miles* (*supra*) is not entirely free of ambiguity, but it does appear that the decision was premised upon at least three distinct grounds. Initially, the court noted that the complicated nature of the asportation distinguished *Miles* from the prior cases. More importantly, the court declared that to the extent the kidnapping could be viewed as a kidnapping with intent to accomplish a murder, the merger doctrine was simply unavailable because it was not "intended to exclude from 'traditional' or 'conventional' kidnapping abductions designed to effect extortions or accomplish murder" (*People v Miles,* 23 NY2d 527, 539, *supra*). To the extent that the facts proven in *Miles* might not establish a kidnapping intended to accomplish a murder, the court reasoned that in any event the kidnap merger rule was not applicable because it "has no purpose of ignoring as independent crimes alternative or optional means used in committing another crime which, by the gravity and even horrendousness of the means used, constitute and should constitute a separately cognizable offense" (23 NY2d 527, 539, *supra;* see, also, *People v Laskaris,* 34 NY2d 590).

## II.

The decisions in *Levy, Lombardi* and *Miles* (*supra*) all involved convictions under section 1250 of the Penal Law of 1909, since repealed (see L 1965, ch 1030). The relevant portion of that statute provided that:

"A person who wilfully:

"1. Seizes, confines, inveigles, or kidnaps another, with intent to cause him, without authority of law, to be secretly confined or imprisoned within this state, or to be sent out of the state, or to

be sold as a slave, or in any way held to service or kept or detained, against his will; or

"2. Leads, takes, entices away, or detains a child under the age of sixteen years, with intent to keep or conceal it from its parents, guardian, or other person having the lawful care or control thereof, or to extort or obtain money or reward for the return or disposition of the child, or with intent to steal any article about or on the person of the child; or

"3. Abducts, entices, or by force or fraud unlawfully takes, or carries away another, at or from a place without the state, or procures, advises, aids or abets such an abduction, enticing, taking, or carrying away, and afterwards sends, brings, has or keeps such person, or causes him to be kept or secreted within this state,

"Is guilty of kidnapping".

The minimum penalty for kidnapping, unless the defendant was a parent of the victim, was 20 years to life, and, prior to 1965, if the victim was not "released and returned alive" the death sentence could be imposed (see L 1909, ch 246, as amd by L 1911, ch 625, as amd by L 1933, ch 773, § 1, as amd by L 1963, ch 994, § 3, as amd by L 1965, ch 321, § 3). Literally applied, the broad language of section 1250 would have led to the imposition of these harsh sanctions to a wide range of criminal actions despite enormous differences in the circumstances, culpability and seriousness of the conduct involved (see Proposed New York Penal Law, NY Comm on Revision of Penal Law and Crim Code, Commission Staff Notes, former art 140 [1964]). To a great degree, the perceived injustice of such results led the courts to create the kidnap merger doctrine. Thus, it was that in *People v Levy* (15 NY2d 159, 164, *supra*) the court expressed concern lest the statute be used to "literally overrun several other crimes, notably robbery and rape, and in some circumstances assault, since detention and sometimes confinement, against the will of the victim, frequently accompany these crimes". And in a similar vein, the court in *People v Miles* (*supra,* p 540) explained that "the *Levy-Lombardi* rule was designed to prevent gross distortion of lesser crimes into a much more serious crime by excess of prosecutorial zeal".

In 1967, however, a substantially revised Penal Law took effect (L 1965, ch 1030). The new law abandoned the broadly worded, all-inclusive definition of a single crime of kidnapping by devising an entirely different statutory scheme. Article 135 of the Penal Law divides what had once been a single crime into several distinct crimes of varying degrees of seriousness.

The "general" kidnapping statute is now section 135.20 of the Penal Law, which provides that "[a] person is guilty of kidnapping in the second degree when he abducts another person". To "abduct" a person is "to restrain a person with intent to prevent his liberation by either (a) secreting or holding him in a place where he is not likely to be found, or (b) using or threatening to use deadly physical force" (Penal Law, § 135.00, subd 2). The term "restrain" means "to restrict a person's movements intentionally and unlawfully in such manner as to interfere substantially with his liberty by moving him from one place to another, or by confining him either in the place where the restriction commences or in a place to which he has been moved, without consent and with knowledge that the restriction is unlawful" (Penal Law, § 135.00, subd 1). Thus, to constitute kidnapping in the second degree there must be restraint accompanied by either isolation or the threat or actual use of deadly physical force. Unless one of these elements of abduction is present, restraint alone does not constitute kidnapping, but is instead unlawful imprisonment in either the first or second degree, depending upon the severity of the risks to which the victim is exposed (see Penal Law, §§ 135.05, 135.10). The problem of "child-snatching" by a noncustodial parent or relative is now dealt with as the crime of custodial interference (Penal Law, §§ 135.45, 135.50).

Kidnapping in the first degree, by contrast, requires restraint, abduction and one of several specified aggravating factors sufficient to elevate the crime beyond kidnapping in the second degree. Kidnapping in the first degree is defined in relevant part as follows (Penal Law, § 135.25):

"A person is guilty of kidnapping in the first degree when he abducts another person and when:

"1. His intent is to compel a third person to pay or deliver money or property as ransom, or to engage in other particular conduct, or to refrain from engaging in particular conduct; or

"2. He restrains the person abducted for a period of more than twelve hours with intent to:

"(a) Inflict physical injury upon him or violate or abuse him sexually; or

"(b) Accomplish or advance the commission of a felony; or

"(c) Terrorize him or a third person; or

"(d) Interfere with the performance of a governmental or political function; or

"3. The person abducted dies during the abduction or before he is able to return or to be returned to safety."

Enactment of the present statutory scheme called into substantial question the continuing viability of the kidnap merger doctrine (compare Parker, Aspects of Merger in the Law of Kidnapping, 55 Cornell L Rev 527, 544, n 62, with Criminal Law-Kidnapping-Detention for Period of Hours Held Incidental to Rape, 42 St. John's L Rev 604). The issue reached the Court of Appeals in *People v Cassidy* (40 NY2d 763, *supra*), where it was argued that by creating a separate and more serious crime of kidnapping in the first degree the Legislature had evinced an intent to allow prosecution for kidnapping in the second degree with respect to any criminal endeavor which fit literally within the language of that statute, regardless of whether it was merely incidental to another substantive crime. The court rejected this thesis, concluding that nothing in the legislation impelled the conclusion that the Legislature intended to "write off the merger doctrine entirely or to eliminate it with respect to prosecutions for kidnapping in the second degree under section 135.20 of the Penal Law. The mere fact that the Legislature elected to require an extended period of detention for the most serious degree of the crime of kidnapping gives rise to no conclusion that it thereby intended every shorter abduction to constitute kidnapping in the second degree, thus abolishing the merger doctrine" (40 NY2d 763, 766, *supra*). Nor was the court persuaded that the need for this ameliorative doctrine had been obviated by the elimination of the prior disparity in penalties between kidnapping in the second degree and such crimes as rape and robbery. Rather, the court reasoned that application of the merger rule to kidnapping in the second degree was appropriate to prevent "the comparably objectionable exposure to multiple convictions" (40 NY2d 763, 766-767, *supra*). With merger still applicable to kidnapping in the second degree, we turn to whether it affects kidnapping in the first degree — the conviction in this case.

## III.

Initially, it must be noted that the merger rule is a judicially created one (see *People v Cassidy*, 40 NY2d 763, 765, *supra*) and it must be applied with some caution lest it thwart the intent of the Legislature, the arm of the government with the power to define and limit crimes. It must also be emphasized that in certain cases the effect of the doctrine is to remove from the statutory definition of a kidnapping criminal acts which would otherwise unquestionably constitute kidnappings. That this is so is evidenced by the fact that the merger doctrine applies only if there exists some other crime with which the kidnapping can

be merged (see Parker, Aspects of Merger in the Law of Kidnapping, 55 Cornell L Rev 527, 536). Indeed, in *People v Rios* (60 NY2d 764), without reviewing defendant's contention that the facts indicated the existence of another crime, the Court of Appeals held that the merger doctrine was unavailable since no crime into which the kidnapping could merge was charged. Thus, conduct which would not be considered a separately cognizable kidnapping if undertaken incidentally to another crime charged in the indictment would be deemed a kidnapping if no other crime was charged. For example, in both *People v Hope* (257 NY 147) and *People v Small* (274 NY 551), the defendants were convicted of kidnapping despite the fact that the kidnappings lasted less than two minutes and the victims were transported only a few city blocks before being rescued. Although both cases were decided prior to *Levy*, the Court of Appeals has specifically described those cases as involving true kidnappings to which the merger doctrine was inapplicable because they involved no other crime (see *People v Levy*, 15 NY2d 159, 165, *supra*). Clearly, had there been some other crime available in those cases, the short duration of the asportation and confinement would have subjected them to merger (see, e.g., *People v White*, 88 AD2d 940; *People v Dolan*, 51 AD2d 589, affd 40 NY2d 763). In short, if it is applicable, the merger doctrine operates by transforming what is in fact kidnapping as defined in article 135 of the Penal Law into a nonkidnapping if the period of confinement is relatively brief and the kidnapping is merely an incidental part of some other crime (compare *People v Cassidy*, 40 NY2d 763, *supra*, with *People v Williams*, 77 AD2d 789, and *People v India*, 67 AD2d 488, *supra*).

## IV.

The continued vitality of the merger doctrine with respect to kidnapping in the second degree and its more recent application to the lesser offenses of unlawful imprisonment (compare *People v Geaslen*, 54 NY2d 510, 516-517, with *People v Smith*, 47 NY2d 83, 87) does not mandate its survival when kidnapping in the first degree is the crime charged. Indeed, the Court of Appeals has repeatedly emphasized that the rule is inapplicable to "traditional" or "conventional" kidnappings such as those prescribed by subdivision 1 of section 135.25 (*People v Cassidy*, 40 NY2d 763, 766, *supra; People v Miles*, 23 NY2d 527, 539, *supra; People v Lombardi*, 20 NY2d 266, 271, *supra; People v Levy*, 15 NY2d 159, 164-165, *supra*). Similarly, it is well settled that the merger doctrine is not relevant to the crime of kidnapping in the first degree as defined in subdivision 2 of section 135.25, since the

Legislature has specifically declared that an abduction for one of several enumerated purposes which lasts in excess of 12 hours is punishable as a kidnapping (see *People v Cassidy, supra,* p 766; *People v Lombardi, supra,* p 271; *People v Usher,* 49 AD2d 499, 505, affd 40 NY2d 763; see, also, Hechtman, Practice Commentaries, McKinney's Cons Laws of NY, Book 39, Penal Law, § 135.25, p 502). Whether the doctrine is also inapplicable to a subdivision 3 kidnapping — involving, as here, the death of the victim — has received less attention.

Although in *People v Cassidy (supra,* p 766) the Court of Appeals declared that "application of the merger doctrine [is] unnecessary with respect to prosecution on charges of kidnapping in the first degree" (accord *People v Smith,* 47 NY2d 83, 86, n 2, *supra*), it specifically mentioned only the duration requirement of subdivision 2 in the course of that discussion and may not have intended its remark to encompass subdivision 3 as well. Slightly more significant is the court's statement in *People v Lombardi (supra,* p 271) that section 135.25 imposed a durational requirement "in cases other than the classic crime of kidnapping for ransom and its equivalents". Unless the court had simply overlooked the very existence of subdivision 3, this would seem to imply that a kidnapping during which the victim dies is the equivalent of a classic kidnapping and is thus not subject to the merger doctrine (see, also, *People v Miles,* 23 NY2d 527, 539-540, *supra*).

Apart from these admittedly ambiguous remarks, there are strong reasons for not applying the merger doctrine to subdivision 3. In enacting the present statutes, the Legislature was fully cognizant of the problems caused by the broad language of the single crime provision of the former kidnapping statute (see Proposed New York Penal Law, NY Comm on Revision of Penal Law and Crim Code, Commission Staff Notes, former art 140 [1964]) and intended to alleviate the uncertainties inherent in application of the judicially created merger doctrine by establishing a precise definition of the crime of kidnapping in the first degree (see *People v Lombardi, supra,* p 271). Unlike kidnapping in the second degree, "[k]idnapping in the first degree is, of course, reserved for the most reprehensible kinds of abduction" (Fourth Interim Report of NY Comm on Revision of Penal Law and Crim Code, Staff Comment, art 135, p 32 [1965]). Each subdivision of section 135.25 deals with a different type of aggravating factor sufficient to justify conviction for the crime of kidnapping in the first degree. Subdivision 2 to some extent codifies the merger doctrine by premising liability upon a combination of duration and evil purpose. The other two subdivisions

base liability upon other aggravating characteristics, without consideration of the duration of the restraint or the complexity of the asportation. Subdivision 1 focuses on the intent of the abduction and is applicable whenever the objective is to effectuate an extortion. Similarly, the draftsmen of the statute emphasized that criminal liability under subdivision 3 "rests upon a single, significant aggravating factor: death of the victim * * * This is made sufficient for first degree liability *no matter what the purpose or duration of the abduction*" (Fourth Interim Report of NY Comm on Revision of Penal Law and Crim Code, Staff Comment, art 135, p 33 [1965]; emphasis supplied).

So viewed, application of the merger doctrine to either subdivision 1 or subdivision 3 is patently inappropriate. This is so because the element which distinguishes these crimes quite simply has nothing to do with either the complexity of the asportation or the duration of the confinement, whereas the merger doctrine turns upon those very considerations (see *People v Cassidy,* 40 NY2d 763, 765-766, *supra; People v Miles,* 23 NY2d 527, 539, *supra*). To sustain a conviction for kidnapping in the first degree in violation of either subdivision 1 or subdivision 3, there must be an abduction consisting of the requisite act of restraint accompanied by either the isolation of the victim or the threat or actual use of deadly physical force. Once these technical elements are proven, however, a separately cognizable violation of subdivision 1 is shown by proof that the purpose of the abduction was extortion. If that be the case, the duration of the confinement is immaterial, and the defendant is guilty of kidnapping in the first degree, even if the victim manages to escape after only a few moments of confinement. Similarly, once an abduction is proven, the death of the victim suffices to sustain a conviction for kidnapping in the first degree in violation of subdivision 3 of section 135.25 of the Penal Law even where, as here, the confinement is of short duration. This is so because it is the added factor of the victim's death which calls into play this kidnapping statute.

We also believe that the ameliorative purpose of the merger doctrine is not served when it is employed in the context of the conduct described in subdivisions 1 and 3 of section 135.25. The evil which the merger doctrine was intended to curtail is the problem of "over-charging". It would be abhorrent to our rule of justice to in effect penalize a defendant twice for what is essentially a lesser crime (see *People v Miles,* 23 NY2d 527, 540, *supra; People v Levy,* 15 NY2d 159, 164, *supra*). This danger has been eliminated with respect to kidnapping in the first degree by requiring the existence of one of the aggravating factors

discussed above. Hence, achievement of the purpose served by application of the merger doctrine to kidnapping in the second degree has in effect been obtained with respect to kidnapping in the first degree by the very language of section 135.25. We reject any suggestion that the added factor of death of the victim does not alone justify the imposition of the sanctions imposed upon conviction of kidnapping in the first degree. Suffice it to note that it was this same factor which, under the old kidnapping statute, justified the death penalty (see Penal Law of 1909, § 1250).

Finally, it is significant that the merger doctrine was developed in the context of criminal enterprises which in essence amounted merely to a *lesser* crime. Thus, in creating and applying the doctrine, the Court of Appeals has repeatedly referred to it only in the context of underlying crimes such as rape, robbery and assault (see *People v Levy,* 15 NY2d 159, 164, *supra; People v Lombardi,* 20 NY2d 266, 270, *supra; People v Miles,* 23 NY2d 527, 540, *supra; People v Cassidy,* 40 NY2d 763, 765-766, *supra; People v Geaslen,* 54 NY2d 510, 516-517, *supra*). Indeed, prior to the 1967 revision of the Penal Law, the doctrine appears never to have been used to overturn a conviction if the victim of the kidnapping died or the underlying crime constituted an actual or attempted homicide (see, e.g., *People v Miles, supra*). Similarly, with the notable exception of the Third Department, which has applied the merger doctrine to subdivision 3 kidnappings (see *People v Graham,* 69 AD2d 544, vacated on other grounds 446 US 932, on remand 76 AD2d 228, vacated on other grounds 458 US 1101, on remand 90 AD2d 193, cert den __ US __, 104 S Ct 246; *People v Lucas,* 73 AD2d 699, cross app by People dsmd 53 NY2d 678; see, also, *People v Wood,* 64 AD2d 767), courts applying the present statutory scheme have refrained from applying the merger rule to cases involving the death of the victim (see, e.g., *People v Zada,* 82 AD2d 926). We find the Third Department precedents unpersuasive and decline to follow them (see *Mountain View Coach Lines v Storms,* 102 AD2d 663, 665).

We are, of course, familiar with the decisions in *People v Koslow* (6 AD2d 713, *supra*), and *People v Palmer* (50 AD2d 839). Neither case, however, established a contrary rule. In *People v Koslow* (*supra*), the defendants had walked several blocks with their victim before attacking and killing him at a deserted pier. The court held simply that the People had failed to prove that the trip to the pier was a kidnapping because of an absence of evidence that the victim had been taken there against his will.

Moreover, the element of restraint involved in the assault itself clearly did not constitute a kidnapping even under New York law as it stood prior to the creation of the merger doctrine since it was of the sort which inevitably occurs during any assault (see *People v Florio,* 301 NY 46, 49, *supra*). In *Palmer,* although the defendant was charged with both murder and kidnapping in the second degree, the homicide victim was not one of the kidnapping victims. Therefore, neither case is relevant to the instant dispute.

Since defendant's other claims also lack merit and to apply the kidnap merger doctrine to the crime of kidnapping in the first degree would be to thwart the clear intent of the Legislature without furthering the ameliorative purpose of the merger doctrine, there should be an affirmance.

BROWN, J. (concurring in the result). I am not prepared to join my colleagues in the majority in sounding the death knell for the merger doctrine in all first degree kidnapping prosecutions in which the victim dies (Penal Law, § 135.25, subd 3). The merger rule (*People v Levy,* 15 NY2d 159; *People v Lombardi,* 20 NY2d 266) was created "to prevent gross distortion of lesser crimes into a much more serious crime by excess of prosecutorial zeal" (*People v Miles,* 23 NY2d 527, 540, cert den 395 US 948). Its rationale is made no less compelling by the fact that the death of the victim ultimately ensues. In the case in which the detention is an inseparable part of the homicide, the merger doctrine should still be available to prevent the "unnatural elevation of the 'true' crime to be charged" (*People v Cassidy,* 40 NY2d 763, 767).[*]

I would not, however, apply the merger doctrine here since this is not a case in which the kidnapping prosecution is based "on acts which are so much the part of another substantive crime that the substantive crime could not have been committed without such acts and that independent criminal responsibility may not fairly be attributed to them" (*People v Cassidy, supra,* p 767; *People v Smith,* 47 NY2d 83). Rather, the facts herein fit within the exception to the merger doctrine in which a separate prosecution is authorized by reason of the fact that the victim's abduction was independent of the subsequent homicide (see *People v Miles, supra*). It appears that defendant's initial motive was to restrain his victim and move him from one place to

---

[*] While kidnapping in the first degree is classified as a class A-I felony (Penal Law, § 135.25) all homicide offenses, with the exception of murder in the first and second degrees (Penal Law, §§ 125.27, 125.25), are classified as lesser offenses (e.g., Penal Law, §§ 125.20, 125.15, 125.10).

another under threat of deadly physical force in an effort to locate another individual; the abduction was, in spite of its brevity, an end in and of itself and was not incidental to the killing of the victim.

Accordingly, I conclude that under the circumstances at bar the defendant was properly convicted of kidnapping in the first degree. I agree that defendant's other contentions are without merit.

BOYERS and EIBER, JJ., concur with LAZER, J. P.; BROWN, J., concurs in the result, with an opinion.

Judgment of the Supreme Court, Kings County, rendered January 5, 1982, affirmed.