*110 OPINION OF THE COURT
David Goldstein, J.
These are motions by defendants, made initially at the close of the People’s case and renewed before submission to the jury, inter alla, to dismiss the first two counts of the indictment for kidnapping in the first degree.* Although the defendants were acquitted of these charges and the lesser included counts of kidnapping in the second degree, in my view, the importance of the issue in relation to the improper conduct by the District Attorney in attempting to foreclose application of the merger doctrine warrants consideration of the motion on the merits.
The court had reserved decision on the motions and, notwithstanding the verdict, now grants the motions at the close of the case, upon the prosecution’s failure to establish, beyond a reasonable doubt, the requisite elements of kidnapping in the first degree. The lesser included charges of unlawful imprisonment in the first degree are dismissed under the merger doctrine as inseparable from the underlying crimes of robbery and burglary and the verdict vacated only to that extent.
In the morning hours of September 22, 1992, at about 8:20 a.m., Howard and William Lin left their home on 112th Street and 68th Drive, in Forest Hills, a quiet, residential street, preparing to go to the subway at Queens Boulevard. Howard was on his way to work in downtown Manhattan, William to school at New York University. As the two left their home and crossed the street, they were accosted by five Asian males, with guns and knives, who forced them back into the house.
Once inside, Howard was directed to open the front door, at which point two of the five who had stopped him on the street, entered. William and his mother, Diana, were taken to the living room, where they were forced to lay on the floor, William’s hands bound with a dog’s leash and both covered with a blanket or cover, guarded by three of the intruders, one with a knife and one with a gun, while Howard was taken by the other two to the basement. They told him to "cooperate with us, otherwise we are going to kill all of you.” After Howard opened the safe, on finding no money, only jewelry, defendant Ming Wong told him, "You play game with me? We *111 want money! Money! * * * If you play games with me I’m going to kill all of you.”
Thereupon, Howard went back upstairs, where he retrieved and opened his briefcase, which contained almost $15,000 cash. At that point, he was told to go back downstairs and, on the way, heard a gunshot. He ran back upstairs, where he observed a bullet hole in the floor, between the living room and the dining room, and saw his wife and son guarded by three of the men, one of whom was defendant Dong Nguyen, who held the larger automatic weapon. After ascertaining that his family was all right, Mr. Lin was told by one of the perpetrators: "Well, if you don’t cooperate we show you it is real. If you don’t cooperate with us the bullets will not go to the floor.”
Once downstairs again, defendant Wong collected the jewelry and stuffed it into his pockets, telling Howard, "We want two hundred thousand dollars. * * * We have to have two hundred thousand dollars. * * * You have a second safe.” When he denied having another safe, they began hitting and punching him and pushing him into the wall. At that point, Wong suggested, "Well, if you don’t get two hundred thousand dollars, we going to kill you. * * * You have money in the bank. * * * Go get it. I take your wife, go get the money, and give it to us, we release you. * * * Let your wife get two hundred thousand dollars. Let your wife to [sic] get two hundred thousand dollars to give to us and then you go.”
It was at that time, apparently, that the police arrived upon the scene, having been summoned to the area by a 911 call from a neighbor. This prompted the intruders to run upstairs to the second floor, where they attempted to escape by fleeing through second-story windows, while the Lins ran out through the front door, where they were met by police officers.
The perpetrators were chased by the police, who caught three of the five intruders, one (Dong Nguyen), a couple of houses away, on 68th Drive, a second (Cam Lu), running against the traffic, on the service road to the Grand Central Parkway, and a third (Ming Wong), caught after a chase through backyards, in a garden apartment housing complex, near Forest Hills High School, three or four blocks from the scene. Wong was seen tossing a small .25 caliber automatic weapon and his pockets were found stuffed to the point of overflowing with cash and jewelry identified as belonging to the Lin family.
*112 In addition to the kidnapping counts, the indictment charges robbery, burglary and criminal possession of both weapons, namely, the .45 caliber Colt automatic and the .25 caliber automatic. The indictment, in accordance with the presentment by the District Attorney, and in deliberate fashion, carefully delineates only Howard Lin, the father, as the victim of the robbery and burglary, and Diana and William Lin, the mother and son, as the victims of the kidnapping. This is done, notwithstanding that (1) both Howard and William were accosted on the street and, at gunpoint, both were taken back to the house, (2) all three were actually victims of a robbery in that jewelry and property belonging to all three were taken, (3) all three lived in the home vis-á-vis the burglary charge, and (4) the two automatic weapons were held on all three at different times during the encounter, both on the street and in the house, either in the basement with Howard, or in the living room with Diana and William, while they were being guarded.
Plainly, this was done, or so it appears, to isolate the kidnapping charge as directed only against the mother and son, who, under the indictment, were not the victims of any other charged crime. In this manner, so argues the District Attorney, there can be no merger, since, under this indictment, there is no underlying crime into which kidnapping may be merged.
While, on the surface, the argument has some simplistic appeal, under the facts of this case, it would exalt form over substance and would be inconsistent with an individual’s right to be dealt with fairly, especially in terms of governmental prosecutions. At issue is whether a prosecutor may properly "juggle” the charges in the indictment in relation to the victims to eliminate certain charges vis-á-vis certain victims and thereby avoid the legal consequences of the merger doctrine.
The merger doctrine was a judicially created response to the harsh consequences of former Penal Law § 1250 (1), which, in substance, defined kidnapping as confining another against the victim’s will and provided for a minimum sentence of 20 years to life. To prevent this harsh result in cases which, actually, amounted to a robbery, a rape, or some other underlying crime, but which did involve some degree of restraint, the Court of Appeals held that, where the restraint was part and parcel of some underlying crime, usually a robbery or rape, it would not escalate the crime to kidnapping, which *113 would merge with the underlying crime (see, People v Cassidy, 40 NY2d 763; People v Lombardi, 20 NY2d 266; People v Levy, 15 NY2d 159, cert denied 381 US 938).
Although the harshness of the prior kidnapping statute was somewhat ameliorated by the enactment of the present Penal Law § 135.00 et seq., the Court of Appeals sustained the continued viability of the merger doctrine in People v Cassidy (supra) wherein it held that, if it was the intention of the Legislature to require an extensive period of detention in order to constitute a kidnapping, or to abolish the merger principle by dividing kidnapping into various degrees, this could have been readily accomplished by clear, explicit legislative provision. In the absence of such language, it should be presumed that the Legislature intended the statute to be interpreted consistent with the merger doctrine (supra, 40 NY2d, at 766).
In People v Gonzalez (80 NY2d 146) the Court of Appeals held the merger doctrine inapplicable to the facts of that case. The victim, four months pregnant, was taken by automobile for about two hours, during which time she was terrorized. She was verbally and physically abused, which included punching and hitting about the face and head, both with fists and with a gun. When the vehicle stopped at a vacant lot, she was taken out of the automobile, whereupon defendant punched and kicked her and, while she was on the ground, told her he was going to rape her. Complainant lost consciousness and was unable to say if she actually had been sexually assaulted, although she did conclude that she had been raped. Her legs, stomach and vagina felt sore and her legs were "sticky.” She found her clothing strewn about the lot. Defendant was acquitted of attempted rape but was convicted of kidnapping in the second degree. The Appellate Division concluded that the kidnapping conviction should be merged in the attempted rape acquittal and dismissed that charge. The Court of Appeals reversed, holding, under the facts of that case, that merger did not preclude a kidnapping conviction since the kidnapping had already been completed when the sexual attack took place: "The abduction constituted the discrete crime of second degree kidnapping which was already completed, in all its elements, before the victim was allegedly sexually assaulted. The restraint was not a minimal intrusion necessary and integral to another crime, nor was it simultaneous and inseparable from another crime. It was a crime in itself’ (supra, 80 NY2d, at 153).
*114 The "guiding principle,” clearly and succinctly expressed by Judge (now Chief Judge) Kaye in People v Gonzalez (supra, 80 NY2d, at 152-153) is instructive:
"The merger doctrine is thus a means of effectuating the Legislature’s intent by precluding additional kidnapping sanctions for conduct that, while literally falling within the definition of that crime, was not intended to be separately treated as kidnapping. Moreover, despite the parity of punishment, the merger doctrine prevents multiple convictions for conduct that, in fairness, should result in a single conviction. * * *
"The guiding principle is whether the restraint was 'so much the part of another substantive crime that the substantive crime could not have been committed without such acts and that independent criminal responsibility may not fairly be attributed to them’ (People v Cassidy, 40 NY2d, at 767, supra; see also, People v Cain, 76 NY2d 119, 125; People v Geaslen, 54 NY2d 510, 516-517) * * * where the restraint and underlying crime are essentially simultaneous, separate punishment may not be appropriate, depending on the circumstances (see, People v Cain, 76 NY2d 119, 125 [asportation and restraint of victim incidental to and inseparable from over-all scheme of robbery]; People v Dolan, 40 NY2d 763, 768 [sexual advances made while driving around]; People v Geaslen, 54 NY2d, at 517, supra [restriction of victim’s movements incidental to simultaneous commission of attempted rape])” (emphasis added).
In terms of the applicable law, it has also been held that the merger doctrine is inapplicable to kidnapping in the first degree and only applies to kidnapping in the second degree (see, People v Pellot, 105 AD2d 223, 230-231; see also, People v Rivers, 150 AD2d 736, 737). In People v Pellot (supra, at 230-231) Justice Lazer, writing for a unanimous Appellate Division, in a careful, incisive analysis, held the merger doctrine inapplicable to " 'traditional’ ” or " 'conventional’ ” kidnappings, as prescribed by Penal Law § 135.25 (1) (citing People v Cassidy, 40 NY2d 763, 766, supra; People v Miles, 23 NY2d 527, 539; People v Lombardi, 20 NY2d 266, 271; People v Levy, 15 NY2d 159, 164-165), nor to those defined in section 135.25 (2), dealing with abductions for certain purposes, which last more than 12 hours, nor to those under subdivision (3), involving the death of the victim. In so holding, the Court recognized that criminal responsibility under subdivision (1) "focuses on the intent of the abduction and is applicable when *115 ever the objective is to effectuate an extortion.” (People v Pellot, supra, at 232.)
Thus, in such a situation, the duration of the restraint is without dispositive effect. The observation and holding by the Appellate Division in People v Pellot is most instructive (supra, 105 AD2d, at 232): "So viewed, application of the merger doctrine to either subdivision 1 or subdivision 3 is patently inappropriate. This is so because the element which distinguishes these crimes quite simply has nothing to do with either the complexity of the asportation or the duration of the confinement, whereas the merger doctrine turns upon those very considerations (see People v Cassidy, 40 NY2d 763, 765-766, supra; People v Miles, 23 NY2d 527, 539, supra). To sustain a conviction for kidnapping in the first degree in violation of either subdivision 1 or subdivision 3, there must be an abduction consisting of the requisite act of restraint accompanied by either the isolation of the victim or the threat or actual use of deadly physical force. Once these technical elements are proven, however, a separately cognizable violation of subdivision 1 is shown by proof that the purpose of the abduction was extortion. If that be the case, the duration of the confinement is immaterial, and the defendant is guilty of kidnapping in the first degree, even if the victim manages to escape after only a few moments of confinement” (emphasis added).
In Pellot (supra), unlike our case, there was no underlying crime into which the kidnapping charge could be merged (see, People v Salimi, 159 AD2d 658). In addition, Pellot dealt with Penal Law § 135.25 (3), wherein the clear legislative intent was to impose the harsher consequences of a kidnapping conviction to a situation where the abducted person dies, notwithstanding the potential availability of either a murder or manslaughter charge.
In the present situation, notwithstanding the segregation of charges in the indictment, all three complainants were actually the victims of both the robbery and the burglary. Although, conceivably, a factual situation may properly fall within different criminal provisions so as to constitute separate and distinct acts, in my view, it would be improper prosecutorial zeal to manipulate the facts to isolate and segregate the victims in relation to the crimes charged, as may have occurred here. That this may have been the intention of the District Attorney in this case appears from the absence of any criminal charge concerning restraint or at *116 tempted kidnapping as to Howard Lin, the father, with the requisite extortion element the suggestion or direction that the wife be sent to get $200,000 to secure her husband’s release. Although the criminal acts in this case were in their infancy when the police arrived on the scene, the foregoing restraint is the clearest and most direct indication, of what could have been designated an attempted kidnapping on this record. The fact that it was thwarted by the simultaneous arrival of the police is without dispositive effect.
Notwithstanding the language in People v Pellot (supra), that merger applies only to kidnapping in the second degree, in People v Addison (151 AD2d 372, lv denied 74 NY2d 946), the Appellate Division, First Department, under the facts of that case, held that the merger principle would not preclude a conviction for kidnapping in the first degree, since the robbery had been fully consummated before the abduction and the kidnapping was "a separate and discrete crime neither incidental to nor inseparable from the robbery” (151 AD2d, at 373).
In Addison (supra), which is factually distinguishable, defendant committed a gunpoint robbery of a pizza store, taking money and jewelry from an employee and patrons and, in the process, locking the victims in a restroom in the rear of the store. When the police arrived, he took the employee to the front to use as a hostage to secure his release. Plainly, the abduction there was a separate act, unrelated to the robbery, which, to all intents and purposes, had been completed.
In the present case, however, the situation is quite different. Here, there was one continuous criminal activity directed at all three complainants, as occupants of the subject premises. Father and son were accosted on the street and were taken inside, where mother and son were segregated in one room and the father was led around the house in search of money and property. At one time or another, the two automatic weapons were held on all three. Plainly, all were victims of the burglary and, to the extent the mother’s and son’s property was taken, they were also victims of a robbery, albeit they were sequestered in another room at the time.
The only basis for sustaining this factual scenario as representing a burglary-robbery vis-á-vis the father and a separate kidnapping, insofar as concerns the mother and son, is the imaginative manner by which the indictment was created to pose, in two neat, tidy packages, a burglary-robbery as to the *117 father, and a kidnapping as to the mother and son. This approach, however, overlooks the actual facts as they unfolded. It also fails to perceive that, while the situation might have escalated into an actual kidnapping, the arrival of the police intervened. Clearly, under the facts of this case, there was no extortion at the time the police arrived. Inasmuch as, at that time, the extortion and the robbery were one and the same, we do not have two separate, independent crimes. (See, People v Pellot, supra, 105 AD2d, at 232.) Moreover, as stated, the manner by which the indictment was crafted, in avoidance of the legal and equitable principle underlying the merger doctrine, is improper and transcends the prosecutorial role, which does carry with it a degree of fairness in terms of the public.
People v Kalyon (142 AD2d 650, lv denied 72 NY2d 1046), relied upon by the People, is distinguishable. In that case, defendant abducted Ogur Dogan at gunpoint and ordered him to enter the vehicle of Ms. Onar, the former wife of both defendant and Dogan. Onar was seated in the vehicle with her six-year-old daughter. Although defendant, seated in the rear, ordered Dogan to drive to the beach, he drove toward the police precinct. Less than a block away, Ms. Onar jumped from the rear and was struck by a shot fired by defendant, which caused partial paralysis.
The Appellate Division, Second Department, rejected defendant’s claim that the second degree kidnapping charge merged with the first degree assault charge, since, (1) as to both Dogan and the child, defendant was charged only with kidnapping, not assault and, thus, there was no charge into which kidnapping could merge and, (2) as to Ms. Onar, the kidnapping and the assault were two separate and distinct crimes, unrelated to each other. The assault was not part of the kidnapping and was brought on by Ms. Onar’s attempt to escape.
Thus, People v Kalyon (supra) is inapposite to our case, since, in Kalyon, it is clear that there was no other charge which could have been brought insofar as concerns Dogan and the child. This is quite different from the present case, where defendants could have and should have been charged with burglary and robbery as to the mother and son (in addition to the father) and were not, not because the Grand Jury rejected those charges, but as a result of the prosecution’s election not to present them, a decision which may have been motivated to avoid the legal consequences of a merger.
*118 Similarly distinguishable is People v Rios (60 NY2d 764, affg 88 AD2d 1056) where both the Court of Appeals and Appellate Division, Third Department, found merger to be inapplicable to the second degree kidnapping charge at issue in that case. However, in Rios, unlike our case, there was no other crime which could have been charged which was incidental to or inseparable from the abduction.
Notwithstanding, the wide latitude and discretion accorded to the prosecutor in terms of the charges to be presented to a Grand Jury, in my view, it is improper to withhold from the grand jurors’ consideration certain crimes in relation to certain victims in order to avoid the legal consequences which flow from application of the merger doctrine. This, to some degree, impinges upon the function and prerogative of the Grand Jury, both in terms of its investigatory role and in determining which charges are to be included in an indictment.
Upon the foregoing, the first two counts for kidnapping in the first degree, which are actually part and parcel of the burglary-robbery, are dismissed, notwithstanding the verdict, as are the lesser included counts for unlawful imprisonment in the first degree, as having merged in the robbery and burglary charges.

 Two of the three defendants were convicted, inter alla, of robbery in the first degree, burglary in the first degree and unlawful imprisonment in the first degree and the third was acquitted of all charges.