THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v RICKY USHER, Appellant.

Second Department, December 1, 1975

*William A. Gogel* for appellant.

*Eugene Gold, District Attorney (Laurie Stein Hershey* of counsel), for respondent.

SHAPIRO, J. The defendant was indicted for the crimes of robbery in the first degree, robbery in the second degree, grand larceny in the third degree and kidnapping in the second degree. After a jury trial, he was acquitted of the robbery and larceny charges and convicted of the kidnapping charge. On this appeal he contends that, as a matter of law, the conviction cannot stand. We agree and therefore reverse the judgment of conviction and dismiss the kidnapping count.

THE ISSUE

May a defendant be convicted of kidnapping in the second degree (Penal Law, § 135.20) when the kidnapping was merely incidental to, and an integral part of, the underlying felony of

robbery, for which the defendant was charged but acquitted after a jury trial?

## THE FACTS

The relevant facts, viewed most favorably to the People, may be summarized as follows:

The victim was accosted at knife point by the defendant and a confederate on May 29, 1973, at about 12:15 A.M., as she was walking home from work. She was forcibly taken to a vacant building, a distance of a minute's walk away, where they took some change from her pocketbook. She was then taken to a room in an adjoining building where she was raped by both men. The time interval of the whole incident was approximately 25 minutes. The defendant was not indicted for rape.[1]

## THE LAW

Subdivision 1 of section 1250 of the former Penal Law provided, in pertinent part, that one who "confines" another "with intent to cause him * * * to be confined * * * against his will" was guilty of kidnapping. The maximum sentence provided (subd 3) was death, until the statute was changed in 1963[2] to make it life imprisonment.

Prior to 1965, when *People v Levy* (15 NY2d 159) was decided, New York decisional law was that virtually any restraint, confinement or movement of the victim constituted kidnapping, even though it was undertaken solely to facilitate commission of another crime *(People v Florio,* 301 NY 46). The *Levy* case involved convictions for robbery in the first degree, possession of a pistol and kidnapping. The Court of Appeals, recognizing the severity of the sentence for a kidnapping conviction, and the fact that the then existing definition of kidnapping could "literally overrun several other crimes, notably robbery and rape * * * since detention and sometimes confinement, against the will of the victim, frequently accompany these crimes" (p 164), overruled *Florio* and rejected its construction of the kidnapping statute. The *Levy* court stated (p 164): "It is unlikely that these restraints, sometimes accom-

---

1. The victim's testimony as to the rape, although uncorroborated, was properly received for the purpose of completing the narrative and confirming the identification of the defendant (see *People v Acevedo,* 32 NY2d 941; *People v McKinley,* 33 NY2d 995).

2. L 1963, ch 994, § 3.

panied by asportation, which are incidents to other crimes and have long been treated as integral parts of other crimes, were intended by the Legislature in framing its broad definition of kidnapping to constitute a separate crime of kidnapping, even though kidnapping must sometimes be spelled out literally from the statutory words."

The court thereupon limited the application of the kidnapping statute then in effect to " 'kidnapping' in the conventional sense in which that term has now come to have acquired meaning" (pp 164-165) and reversed the kidnapping convictions. Thereafter, in *People v Lombardi* (20 NY2d 266), where the convictions were for attempted rape in the first degree, other crimes and kidnapping, the kidnapping convictions were reversed on the same theory.

The *Levy* holding found favor in several other jurisdictions, most notably in California. In 1969, the Supreme Court of that State, in *People v Daniels* (71 Cal 2d 1119), citing *Levy* with approval, overruled numerous earlier decisions and held that movements merely incidental to the commission of a robbery which do not substantially increase the risk of harm over and above that necessary and present in the robbery were not sufficient to constitute the separate felony of aggravated kidnapping under California law.[3]

---

3. In 1974, the Supreme Court of California expressly rejected an attempt to extend the rule in *Daniels* to convictions for simple kidnapping under section 207 of the California Penal Code *(People v Stanworth,* 11 Cal 3d 588, 598–599). In *Stanworth,* the court ruled that the two conditions enumerated in *Daniels* as necessary to sustain a conviction for aggravated kidnapping under section 209 of the California Penal Code required consideration of the underlying crime of robbery, while a simple kidnapping under section 207 did not, by definition, occur in connection with another offense such as robbery. Accordingly, the court in *Stanworth* (p 601) held that a kidnapping which was incidental to a robbery and did not create a substantial risk of harm to the victim over and above that necessarily present in the robbery could nevertheless be prosecuted under the simple kidnapping statute in California (§ 207) under the following test: "Of course in the application and enforcement of the section, it is our duty to avoid 'absurd consequence[s]' and achieve a 'sensible construction.' * * * '[T]he statute is to be given effect in its commonsense meaning.' * * * In performing that duty, it is imperative to refer to the language of section 207 itself. The section defines kidnapping in part as movement 'into another country, state, or county, or into another part of the same county.' The statutory language implies that the determining factor in the crime of kidnapping is the actual distance of the victim's movements; and further, that the minimum movements necessary for the commission of the crime are present where the victim is forcibly taken 'into *another part* of the same county.' * * * Finally, because the victim's movements must be more than slight * * * or 'trivial' * * * they must be substantial in character to constitute kidnapping under section 207" (emphasis by Cal Sup Ct).

Applying that test to the facts before it, the court in *Stanworth* upheld a conviction

The holding and spirit of *Levy* and *Lombardi* were both preceded and followed by new legislative proposals and enactments. The Model Penal Code, adopted by the American Law Institute in 1962, provides:

"Section 212.1 Kidnapping.

"A person is guilty of kidnapping if he unlawfully removes another from his place of residence or business, or a substantial distance from the vicinity where he is found, or if he unlawfully confines another for a substantial period in a place of isolation, with any of the following purposes:

"(a) to hold for ransom or reward, or as shield or hostage; or

"(b) to facilitate commission of any felony or flight thereafter; or

"(c) to inflict bodily injury on or to terrorize the victim or another; or

"(d) to interfere with the performance of any governmental or political function.

"Kidnapping is a felony of the first degree unless the actor voluntarily releases the victim alive in a safe place prior to trial, in which case it is a felony of the second degree."

The drafters of the Model Code noted that "it is desirable to restrict the scope of kidnapping, as an alternative or cumulative treatment of behavior whose chief significance is robbery or rape, because the broad scope of this overlapping offense has given rise to serious injustice * * * Examples of abusive prosecution for kidnapping are common. Among the worst is use of this means to secure a death sentence or life imprisonment for behavior that amounts in substance to robbery or rape, in a jurisdiction where these offenses are not subject to such penalties. The criminologically nonsignificant circumstance that the victim was detained or moved incident to the crime determines whether the offender lives or dies." (Comments to § 212.1, Tent. Draft No. 11, 1960, pp 13–14.) The draftsmen of this section of the Model Penal Code were of the opinion that it would "preclude kidnapping convictions based on trivial changes of location having no bearing on the evil at hand" (Comments to § 212.1, *supra,* p 16).

The Model Penal Code definition of kidnapping was initially

---

for kidnapping under section 207 which was committed incidental to the crimes of robbery and rape.

promulgated in 1964, one year prior to the *Levy* decision, and in virtually identical terms, by the draftsmen of the New York State Commission on Revision of the Penal Law and Criminal Code (see NY Legis Doc, 1964, No. 14, p 23). Subsequent to the *Levy* decision the Legislature enacted a statutory scheme for the crime of kidnapping, effective September 1, 1967 (L 1965, ch 1030), which provides in pertinent part:

"§ 135.20 Kidnapping in the second degree.[4] A person is guilty of kidnapping in the second degree when he abducts another person."

"§ 135.25 Kidnapping in the first degree. A person is guilty of kidnapping in the first degree when he abducts another person and when:

"1. His intent is to compel a third person to pay or deliver money or property as ransom, or to engage in other particular conduct, or to refrain from engaging in particular conduct; or

"2. He restrains the person abducted for a period of more that twelve hours with intent to:

"(a) Inflict physical injury upon him or violate or abuse him sexually; or

"(b) Accomplish or advance the commission of a felony; or

"(c) Terrorize him or a third person; or

"(d) Interfere with the performance of a governmental or political function".

Kidnapping in the second degree is a class B felony, which carries a maximum term of imprisonment of 25 years. Kidnapping in the first degree is a class A-I felony, which carries a maximum term of life imprisonment. (Penal Law, §§ 135.20, 135.25, 70.00, subd 2, pars [a], [b].)

The Practice Commentary to section 135.20 in McKinney's Consolidated Laws of New York (Book 39, Penal Law) states: "*Kidnapping in the second degree embraces the entire spectrum of genuine kidnapping conduct* * * *. Examples of kidnapping conduct supporting a second degree but not a first

---

4. The Fourth Interim Report of the Temporary Commission on Revision of the Penal Law and Criminal Code (p 32) indicates quite clearly that to sustain a conviction for kidnapping in the second degree under this section there must be "a very serious form of *restraint,* savoring strongly of the substantial removal, isolation and/or violence usually associated with genuine kidnapping" (emphasis in original).

As was pointed out in 42 St. John's L Rev 604, 609, "Although the word abduction is specifically defined, its definition connotes a broad application much like the prior law and, thus, necessitates the use of the *Levy* rule to limit it to genuine kidnapping situations."

degree conviction are numerous: child stealing by a love-starved woman; abduction and confinement of a woman for a day or so in an isolated place in order to prevent her from engaging in a marriage ceremony; and confinement of a guard or watchman by violence or threat for a few hours for the purpose of advancing a burglary" (emphasis supplied).

The Practice Commentary to subdivision 2 of section 135.25 [the 12-hour detention provision] states: "Perhaps the principal significance of this provision lies in its application to abductions which are incidental to or an integral part of the commission of an independent crime, such as a robbery or rape in which the victim is removed or confined for a given period of time in order to effectuate the criminal purpose. *Where the abduction period is brief, the criminal enterprise in its entirety appears as little more than an offense of robbery or rape, and lacks a genuine 'kidnapping' flavor.* Nevertheless, cases of this nature are sometimes prosecuted as kidnapping in order that the higher penalty for the latter may be invoked * * *. The New York Court of Appeals has indicated an aversion to this strategy by refusing to recognize as kidnapping a robbery executed in part by means of a brief abduction *(People v Levy,* 1965, 15 NY2d 159 * * *). *"The latter type of case is here excluded from the first degree kidnapping ambit by the requirement that the abduction period be of at least twelve hours duration. While that figure is an arbitrary one, it represents an attempt to designate a point in the course of such a criminal project at which the abduction becomes a major offense in itself and not merely a facet of some other crime"* (emphasis supplied).

The People reason that by making kidnapping in the second degree a class B felony—and therefore subject to the same sentencing provisions as rape in the first degree and robbery in the first degree, also class B felonies—the Legislature met the concern of the *Levy* court that a defendant might receive a more stringent penalty in a case in which a rape or a robbery was accompanied by an incidental restraint or kidnapping. Consequently, the People argue that the conviction in this case for kidnapping in the second degree was proper and should be sustained. We disagree.

In *People v Lombardi* (20 NY2d 266, 270, *supra)*,[5] the court,

---

5. *People v Miles* (23 NY2d 527), decided after *Levy* and *Lombardi,* does not lay down a contrary rule of law. In that case, although there were other underlying felonies, the *nature and length of the asportation* were sufficient to support the

although no doubt aware that article 135 of the Penal Law (the new kidnapping statute) was to become effective within two months after its decision, said: "But the direction of the criminal law has been to limit the scope of the kidnapping statute, with its very substantially more severe penal consequences, to true kidnapping situations *and not to apply it to crimes which are essentially robbery, rape or assault and in which some confinement or asportation occurs as a subsidiary incident"* (emphasis supplied).

It then added that "asportation in the present case, for example, played no significant role in the crimes" (p 270). In our case, too, the asportation "played no significant role in the crime" and was for only a distance of a minute away from the place where the victim had been taken hold of by the defendant and his companion.

The People's present contention was rejected by this court in *People v Watts* (48 AD2d 863). In that case the defendant was convicted of rape in the first degree, kidnapping in the second degree and sexual abuse in the first degree. Citing *Lombardi* (20 NY2d 266, *supra),* we reversed the kidnapping conviction, saying that "any detention of the victim was incidental to the commission of the crimes of rape and sexual misconduct."

Moreover, even if, *arguendo,* we were to accept the view that detentions or restraints, *lasting less than 12 hours,* which are merely incidental to the commission of other felonies, may, under certain limited circumstances, serve as the basis for convictions of kidnapping in the second degree (see Practice Commentary to Penal Law, § 135.20, *supra; People v Stanworth,* 11 Cal 3d 588, *supra,* n 3; Aspects of Merger in the Law of Kidnapping, 55 Cornell L Rev 527 [1969–70]), we would nevertheless reverse the judgment of conviction of kidnapping in the second degree in this case. In our view, the Legislature, in defining kidnapping in the second degree, did not purpose

---

kidnapping conviction. So that its holding would not be misunderstood, the *Miles* court pointed out that it was not reversing the merger doctrine espoused in the *Levy-Lombardi* cases, saying (p 539), "Indeed, in any robbery, there is a restraint of 'false imprisonment' and in every rape there is a similar restraint and often removal in some limited sense. It is this kind of factual merger with the ultimate crime of the preliminary, preparatory, or concurrent action that the rule is designed to recognize, and thus prevent unnatural elevation of the 'true' crime to be charged." In reaffirming its adherence to the *Levy-Lombardi* merger rule it then said (p 540): "In short, the *Levy-Lombardi* rule was designed to prevent gross distortion of lesser crimes into a much more serious crime by the excess of prosecutorial zeal."

to include a restraint of such an insubstantial nature as was present in the case at bar, particularly when such conduct is covered by another and more specific Penal Law section (§ 135.10, entitled "Unlawful imprisonment in the first degree"), which provides: "A person is guilty of unlawful imprisonment in the first degree when he restrains another person under circumstances which expose the latter to a risk of serious physical injury."

Nor are we persuaded by the contention that the defendant's acquittal on the robbery charge in some way created a vacuum in which the jury could view the charge of kidnapping in the second degree in total isolation from the facts in the case and contrary to the prosecution's own theory that a robbery and a larceny actually had taken place (cf. *People v Sigismondi,* 49 Misc 2d 1, affd 27 AD2d 937, affd 21 NY2d 186).

We have examined the other points raised by the defendant and find them to be without merit.

Accordingly, the judgment of conviction should be reversed, on the law, and the count for kidnapping in the second degree dismissed.

RABIN, Acting P. J., HOPKINS, CHRIST and MUNDER, JJ., concur.

Judgment reversed, on the law, and the count for kidnapping in the second degree is dismissed.