## THIRD DEPARTMENT, JUNE, 1977

### (June 2, 1977)

■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JAMES HENRY SPINKS, Appellant.—Appeal from a judgment of the County Court of Warren County, rendered June 25, 1973, upon a verdict convicting defendant of the crimes of burglary in the first degree, robbery in the first degree, grand larceny in the second degree, kidnapping in the second degree and burglary in the third degree. During the early morning hours of October 28, 1969, Audrey and Melvin Smith were awakened in the bedroom of their Queensbury home by a person holding what appeared to be a pistol. After the Smiths were tied up by the gunman and questioned about money and the safes in their home and in a store which they owned, they were ordered to leave the house and to enter their 1969 Oldsmobile Toronado. The car was halted at a wooded area and, after tying the Smiths to a tree, the gunman left with the vehicle. The Smiths eventually freed themselves and walked approximately one mile to a house from which they telephoned for medical assistance. While traveling in an ambulance, at approximately 4:00 A.M., the Smiths observed what they believed to be their automobile. Patrolman Murphy of the Glens Falls Police Department proceeded to the Smiths' store following their report, received by the police department at approximately 3:15 to 3:30 A.M., of a possible burglary at the store. The officer observed an individual standing by the rear of the building about 200 feet away. The individual crossed the parking lot leading to the sidewalk, got into an Oldsmobile Toronado parked in a driveway and drove away. Officer Murphy testified that he observed the individual from as close a

distance as 25 feet under conditions of good lighting. There was evidence that the store had been broken into that evening. The defendant's first claim is that prior photographic identifications of him by the Smiths and Officer Murphy were so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification *(Simmons v United States,* 390 US 377). We disagree. We find no valid objection to the photographic identification procedure whereby "The witnesses were shown several photographs of possible suspects by the police and each of them independently selected [defendant's] photograph" *(People v Butler,* 35 AD2d 771). In addition each of the said witnesses had an excellent opportunity to observe the defendant at the time of the commission of the crimes and, as such, there is ample evidence that the courtroom identifications were based upon an independent source resulting from the recollections of the crimes by the respective witnesses *(People v Freeland,* 36 NY2d 518; *People v Carter,* 30 NY2d 279; *People v Gonzalez,* 27 NY2d 53, cert den 400 US 996; *People v La Brake,* 51 AD2d 609). In view of the recent affirmance by the Court of Appeals of the so-called "merger doctrine" *(People v Cassidy,* 40 NY2d 763), we reach a different result with respect to defendant's argument that the kidnapping charge should be dismissed. In *People v Cassidy (supra),* the court described this doctrine, which precludes kidnapping convictions in certain situations, as "of judicial origin and was based on an aversion to prosecuting a defendant on a kidnapping charge in order to expose him to the heavier penalty thereby made available, where the period of abduction was brief, the criminal enterprise in its entirety appeared as no more than an offense of robbery or rape, and there was lacking a genuine 'kidnapping' flavor [citation omitted]" (pp 765-766). The court further noted that the purpose of the merger doctrine was "to preclude conviction for kidnapping based on acts which are so much the part of another substantive crime that the substantive crime could not have been committed without such acts and that independent criminal responsibility may not fairly be attributed to them" (p 767). The conclusion is inescapable in this case that the "kidnapping" was merely an element of the burglary at the store, without which, because the Smiths would most assuredly have notified the police of its possible commission, the burglary would not have been feasible. "It is a common occurrence in robbery, for example, that the victim be confined briefly at gunpoint or bound and detained, or moved into and left in another room and place" *(People v Levy,* 15 NY2d 159, 164; see, also, *People v Lombardi,* 20 NY2d 266). The kidnapping charge cannot stand. We have considered the defendant's remaining arguments and find them to be without merit. Judgment modified, on the law and the facts, by reversing the conviction for kidnapping in the second degree and dismissing the fourth count of the indictment, and, as so modified, affirmed. Koreman, P. J., Greenblott, Sweeney, Main and Larkin, JJ., concur.