OPINION OF THE COURT
Kaye, J.
This appeal tests the application of the merger doctrine in a prosecution for kidnapping and attempted rape, where the defendant is convicted of kidnapping but acquitted of the rape charge. In applying the merger doctrine, we conclude that, whether defendant is acquitted or convicted of the underlying crime, the standard remains the same: did the Legislature intend to punish the restraint or abduction separately as kidnapping? In the case before us, that question must be answered in the affirmative.
I
In November 1987, complainant, then four months pregnant, brought her three children to a friend’s apartment in the same building, to be watched while she went to a local hospital to fill a prescription. Defendant, whom the complainant had known from the neighborhood, was in the friend’s apartment and offered to call a car service for her. When the complainant got into the back seat of the car, at about 4:15 p.m., defendant — who was neither invited nor expected to come along — slid in next to her and told the driver, apparently defendant’s friend, to drive off. The driver did, laughing.
What followed was a lengthy odyssey on the streets of Brooklyn — lasting up to two hours — during which complainant, trapped in the car, was terrorized. Defendant first told her that she would pay for what everyone had done to him. When she denied involvement in his problems, defendant began hitting and punching her about the face and head. Defendant then asked complainant if she liked pain, and dissatisfied with her response, hit her head with a gun. At one point, defendant asked the driver if he would like to see complainant killed. Verbal and physical abuse continued throughout the ride.
When the car finally stopped at a vacant lot, the two men pushed complainant out of the car, and at defendant’s behest the driver punched her in the face. Defendant hit her with his gun and then kicked her stomach, causing her to fall. While *149 she was on the ground, defendant told her he would rape her, at which point she lost consciousness.
Complainant awoke around dawn, clothed only in her shirt and socks. She had a lump on her head; her legs, stomach and vagina felt sore; her legs were "wet” and "sticky.” Although she concluded that she had been raped, complainant did not see or feel anyone touch her sexually. She gathered her other clothing, which had been strewn about the lot, and found her way home on foot, about two miles distant.
Defendant was arrested and later indicted on charges of second degree kidnapping, second degree assault, attempted first degree rape, and attempted first degree sexual abuse. After presentation of the evidence, the trial court announced at a precharge conference that it would not submit the assault counts to the jury because there was insufficient evidence of the statutory physical injury requirements (see, Penal Law § 120.05 [1], [6]). The court also denied the People’s request to submit lesser-included offenses of the assault counts, and declined to submit the sexual abuse charge. Thus, only the kidnapping and attempted rape counts went to the jury.
The jury acquitted defendant of attempted rape but convicted him of kidnapping, and the court imposed a two-to-six-year sentence. On appeal to the Appellate Division, defendant —although not challenging the weight or sufficiency of the evidence — argued that the kidnapping conviction should be merged into the attempted rape acquittal under People v Levy (15 NY2d 159, cert denied 381 US 938) and its progeny. The Appellate Division agreed and dismissed the charge, holding that the kidnapping conviction was "precluded” by the merger doctrine (171 AD2d 127, 130). Justice Rosenblatt, in a comprehensive dissent joined by Justice Balletta, concluded that the majority’s holding was "an expansion of the merger doctrine to lengths that carry it well beyond its purpose and origins” (171 AD2d, at 132-133). We agree, and accordingly reverse.
II
People v Levy (15 NY2d 159, supra) was a judicial response to the all-encompassing statutory definition of kidnapping and the harsh penalties prescribed for a conviction of that crime. As we noted in Levy, the statute (former Penal Law § 1250 [1]) literally embraced any restraint, providing that one who intentionally "confine[d]” another against the victim’s will was guilty of kidnapping, with a minimum sentence of 20 *150 years to life (15 NY2d, at 164). We observed, moreover, that restraint often accompanies a robbery or rape, and that although such restraint might technically fall within the statutory definition of kidnapping, it was unlikely that the Legislature intended to separately punish the robber or rapist as a kidnapper. Thus in Levy, where defendants took control of a car at gunpoint and robbed the occupants of money and jewelry while driving for 20 minutes, "[i]n essence the crime remained a robbery although some of the kidnapping statutory language might literally also apply to it.” (15 NY2d, at 165.) Accordingly, we dismissed defendants’ kidnapping convictions but upheld the robbery charges.
Similarly, People v Lombardi (20 NY2d 266) upheld rape and assault convictions but dismissed three kidnapping charges where defendant (a pharmacist), in three separate incidents, drugged female employees and drove them from Manhattan to a Queens motel for sexual purposes. The Court stated that "the direction of the criminal law has been to limit the scope of the kidnapping statute, with its very substantially more severe penal consequences, to true kidnapping situations and not to apply it to crimes which are essentially robbery, rape or assault and in which some confinement or asportation occurs as a subsidiary incident.” (Id., at 270.)
The kidnapping statute was substantially revised in 1967, providing for first and second degree kidnapping (see, Penal Law §§ 135.25, 135.20) and the lesser crimes of unlawful imprisonment, also in the first and second degrees (see, Penal Law §§ 135.10, 135.05; see generally, Donnino, Practice Commentaries, McKinney’s Cons Laws of NY, Book 39, Penal Law § 135.00, at 616-618). The revised statute distinguishes between the terms "restrain” and "abduct,” which lie at the heart of these crimes. Restraint is a substantial interference with a person’s liberty by either asportation or confinement (see, Penal Law § 135.00 [1]), while abduction is either restraint in a place where the victim is unlikely to be found (Penal Law § 135.00 [2] [a]) or restraint through the actual or threatened use of deadly physical force (Penal Law § 135.00 [2] [b]; People v Dodt, 61 NY2d 408, 414).
First degree kidnapping, an A-I felony, is an abduction to compel a ransom, or one lasting more than 12 hours for certain enumerated purposes (Penal Law § 135.25), but an abduction without more is second degree kidnapping, a class B felony (Penal Law § 135.20). Unlawful imprisonment in the *151 first degree, an E felony, is defined as a restraint "under circumstances which expose [the victim] to a risk of serious physical injury” (Penal Law § 135.10), and a simple restraint is second degree unlawful imprisonment, a class A misdemeanor (Penal Law § 135.05). Thus, in contrast to its predecessor, the current statutory scheme presents a range of offenses and penalties measured by the gravity of defendant’s conduct.
The question in People v Cassidy (40 NY2d 763) was whether the judicially crafted merger doctrine survived the Penal Law revision, given that there was no longer a single grade of kidnapping carrying a minimum sentence of 20 years to life. We observed that the Legislature considered the problems underlying the former kidnapping statute — where a defendant might be convicted of kidnapping for incidental restraints inherent in other crimes — by specifically requiring, for first degree kidnapping, that the period of abduction last more than 12 hours. We therefore agreed with the People that, in view of this lengthy durational requirement, a conviction of first degree kidnapping should not merge with other crimes. Separate punishment for kidnapping was intended and justified under those circumstances.
The People argued, however, that the merger doctrine should be abrogated in its entirety, that the Legislature’s failure to impose time or distance limitations for second degree kidnapping demonstrated its intent that there not be any. We rejected that argument:
"The mere fact that the Legislature elected to require an extended period of detention for the most serious degree of the crime of kidnapping gives rise to no conclusion that it thereby intended every shorter abduction to constitute kidnapping in the second degree, thus abolishing the merger doctrine. If such had been the legislative intent, appropriate words to accomplish such result were readily available. Absent employment of such language, however, we presume that the statute was to be given effect — as it easily may be — consistent with the then outstanding principle of merger previously enunciated in People v Levy.” (40 NY2d, at 766.)
One of the rationales for the Levy-Lombardi rule was that a defendant who committed essentially a rape or robbery should not be subject to the substantially greater punishment for *152 kidnapping. The People thus argued in Cassidy that since there was no disparity under the Penal Law revision between the penalties for second degree kidnapping and first degree robbery or rape, the merger doctrine was unnecessary to protect against inflated penalties. We likewise rejected that argument, noting that "[although ballooning of the penalty may thereby be said to have been eliminated there remains the comparably objectionable exposure to multiple convictions.” (40 NY2d, at 766-767.)
The merger doctrine is thus a means of effectuating the Legislature’s intent by precluding additional kidnapping sanctions for conduct that, while literally falling within the definition of that crime, was not intended to be separately treated as kidnapping. Moreover, despite the parity of punishment, the merger doctrine prevents multiple convictions for conduct that, in fairness, should result in a single conviction.
The holdings in People v Levy and People v Lombardi were initially described as the "Levy-Lombardi rule” (see, People v Miles, 23 NY2d 527, 539-541). Miles, however, analogized to a "kind of factual merger with the ultimate crime” and a "merger suggestive of, but not quite like, the merger of the preparation and attempt with the consummated crime” (People v Miles, supra, at 539), and therefore the principle came to be known as the "merger doctrine” (see, e.g., People v Cassidy, 40 NY2d, at 765, supra). The term merger, however, may be technically inapt because, unlike a true merger situation, where the lesser crime merges only upon conviction of the greater (see, CPL 1.20 [37]; 300.40 [3] [b]; People v Grier, 37 NY2d 847, 848), the merger analysis in a kidnapping case is unaltered even if defendant is acquitted of the rape or robbery (see, People v Usher, 40 NY2d 763, affg 49 AD2d 499 [kidnapping conviction dismissed on appeal despite acquittal of robbery]). Whether there is an acquittal or conviction of the underlying crime, in each case the question is simply this: did the Legislature intend to punish the restraint or abduction separately?
In undertaking this inquiry, we bear in mind that the present statutory scheme has more precise definitions and sentencing gradations than its predecessor. Convictions that may have "merged” under the former statute — because the Legislature could not have intended the acts to constitute the crime of kidnapping as then understood and punished — might not be dismissed under the present statute (compare, e.g., People v Lombardi, with our holding today).
*153 The guiding principle is whether the restraint was "so much the part of another substantive crime that the substantive crime could not have been committed without such acts and that independent criminal responsibility may not fairly be attributed to them” (People v Cassidy, 40 NY2d, at 767, supra; see also, People v Cain, 76 NY2d 119, 125; People v Geaslen, 54 NY2d 510, 516-517). Where the abduction and underlying crime are discrete, for example, there is no merger (People v Smith, 47 NY2d 83, 87 [no merger when robbery completed before victim forced to embark on hour-long drive]). On the other hand, where there is minimal asportation immediately preceding rape or robbery, the abduction should not be considered kidnapping (see, People v Cassidy, 40 NY2d, at 767, supra [victim dragged 70 feet, then sexually assaulted]; People v Usher, 40 NY2d, at 768, supra [victim pulled across the street into an abandoned building, then robbed and raped]). In addition, where the restraint and underlying crime are essentially simultaneous, separate punishment may not be appropriate, depending on the circumstances (see, People v Cain, 76 NY2d 119, 125 [asportation and restraint of victim incidental to and inseparable from over-all scheme of robbery]; People v Dolan, 40 NY2d 763, 768 [sexual advances made while driving around]; People v Geaslen, 54 NY2d, at 517, supra [restriction of victim’s movements incidental to simultaneous commission of attempted rape]). Finally, a kidnapping conviction is generally sustained where the manner of detention is egregious, regardless of other considerations (see, People v Rodriguez, 70 NY2d 523, 532 [victim placed in trunk of car]; People v Miles, 23 NY2d, at 539, supra).
Applying these criteria, we have no difficulty concluding that the lengthy abduction here, accomplished with a deadly weapon, is the sort of behavior the Legislature intended to proscribe as second degree kidnapping. Indeed, the victim was "subjected * * * to a prolonged episode of unremitting terror and physical brutality” (171 AD2d, at 133 [Rosenblatt, J., dissenting in part]). The abduction constituted the discrete crime of second degree kidnapping which was already completed, in all its elements, before the victim was allegedly sexually assaulted. The restraint was not a minimal intrusion necessary and integral to another crime, nor was it simultaneous and inseparable from another crime. It was a crime in itself.
Accordingly, the order of the Appellate Division should be *154 reversed and the case remitted to that Court for consideration of the facts and other issues not reached on the appeal to that Court.
Chief Judge Wachtler and Judges Simons, Titone, Hancock, Jr., and Bellacosa concur; Judge Smith taking no part.
Order reversed, etc.